LUDLOW VALVE MFG. CO. v. PITTSBURGH MFG. CO.

(Circuit Court of Appeals, Third Circuit. November 19, 1908.)

No. 4.

1. TRADE-MARKS AND TRADE-NAMES (§ 97*)—UNFAIR COMPETITION—NATURE OF JURISDICTION.

The power of courts of equity to restrain unfair competition is founded on sound business morality.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 110; Dec. Dig. § 97.*

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 375.]

2. TRADE-MARKS AND TRADE-NAMES (§ 75*)—UNLAWFUL COMPETITION—USE OF WORDS.

Courts of equity may require any form of words to be used in connection with an appropriated name, used as a generic description of an article, to completely protect the rightful owner of the name from injury and the public from imposition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 75.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 75*)—UNFAIR COMPETITION—EVIDENCE.

One Ludlow, having invented and patented certain valves in 1861, continued to manufacture and sell them, first individually, and afterwards by plaintiff corporation; the valves becoming well and favorably known by the name "Ludlow." The patents having expired, defendant commenced to manufacture and sell the same valves. In defendant's advertisements, the words "Ludlow Valves" were printed prominently at the head in largest type, with illustrations; the repeated use of the word "Ludlow" occupying the main portion of the page, and defendant's name and the place of its location appearing only in small type at the very bottom of the page. Defendant's catalogues, which in most cases were exact copies of complainant's catalogues, with identical price lists, contained illustrations which were evidently photographs from the illustrations in complainant's catalogues. Held that, though defendant might be entitled to use the word "Ludlow" to describe the character of the valves, it was nevertheless guilty of unfair competition, and should be restrained from using such word, except in connection with a clear and unequivocal statement, sufficient to insure that purchasers would know that the valves were manufactured by defendant, and not by complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.*]

Appeal from The Circuit Court of the United States for the Western District of Pennsylvania.

The following is the opinion of Buffington, Circuit Judge, in the court below:

This case was before us on an application for a preliminary injunction, which, after argument, we refused. The proofs on final hearing disclose nothing substantially different or additional, and after argument and careful consideration, we see no reason to grant the decree and injunction now sought. While the record is large, the questions involved are within narrow limits. Apart from some minor articles, the sale of which was abandoned, the substantial question involves the Ludlow valves and hydrants, which respondent is now duplicating and marking "Ludlow Valves" and "Ludlow Hydrants." These were for many years made, marked, and sold by complainant, or its predecessors, under patents. Their peculiar patented features were the wedges

that operated between the gates. This gave to valves and hydrants of that type the generic name "Ludlow." When these patents expired, the right to make such patented valves and to call them "Ludlow Valves," under the case of Singer v. June, 163 U. S. 170, 16 Sup. Ct. 1002, 41 L. Ed. 118, became public. The respondent has availed itself of that right and in its advertisements, literature, and on the valves themselves stated they were made by it. What it has done has neither wrought confusion in the minds of the public nor misled purchasers into believing the Ludlow valves it made were made by the complainant. There is no evidence of fraud or deception in the case. The respondent's action has been open and under claim of right. The facts in the case bring it within the Singer Case, above cited, and the bill will be dismissed.

Let such a decree be drawn.

Louis Marshall (Samuel Untermeyer, A. Leo Weil, and Abraham Benedict, on the brief), for appellant.

James I. Kay and Robert D. Totten, for appellee.

Before DALLAS and GRAY, Circuit Judges.

GRAY, Circuit Judge. The appellant and complainant below filed its bill in the Circuit Court, seeking to restrain the appellee and defendant below from infringing complainant's trade-mark, which consisted of the word "Ludlow," as applied to valves, hydrants and other hydraulic appliances. The bill also alleged unfair competition, from which it also sought relief. The pertinent facts of the case are as follows:

The complainant is a corporation organized under the laws of New Jersey in 1891, and is the successor of a New York corporation of similar name, organized in 1866 by one Henry G. Ludlow, of Troy, N. Y., a gas engineer actively engaged in the construction of gas plants. In the year 1861, said Ludlow obtained a patent for an iron valve, for use in pipes conveying gas, the peculiar features of which were certain wedges in combination with sliding stop valves, sliding gate, and sluice valves. The wedges operated to bring the valve tight against its seat, after it had completed its closing movement, and to enable the valve to work free of its seat in its opening and closing movements, so as to minimize the friction between the face of the valve and the seat. For some time after its organization, the New York corporation confined its operations to the manufacture and sale of the valve invented by Ludlow, for both gas and water, and patented by him in 1861. Afterwards, and after its removal to Troy, the company began to manufacture many other kinds of valves, hydrants, and other apparatus, constantly increasing the variety of its product and embodying designs, mechanisms, patterns and devices of divergent character, for some of which letters patent were obtained by Ludlow and other inventors, and others of which were never patented. The bill alleges that the office and factory of the New York corporation was in the city of Troy, as was and is the office of its successor, the complainant below; that it has there carried on a constantly increasing manufacture, and sold its product throughout the United States and Europe. That the New York corporation had adopted, and the complainant as its successor has continued to use as a trade-mark and trade-name, to denote the origin and source of manufacture of all its products, the word "Ludlow," and designated all of its said prod-

ucts indiscriminately by such trade-mark and trade-name, without regard to whether the article or device manufactured by it was patented or embodied any patented or patentable invention, and without reference to any special type or form of construction applied to or embodied in such article. That the practice of the complainant has been to cast or stamp the name "Ludlow" upon every article manufactured by it, and when an article was patented, the word "patented" and the date thereof was stamped in addition to the word "Ludlow." Complainant alleges that, by the practice and conduct thus briefly referred to, it has acquired a common-law trade-mark in the word "Ludlow", as designating and signifying to the trade the source of manufacture of all its products, whether those which were originally patented or those which were unpatented, and that on or about January 29, 1895, for the purpose of further protecting its said trade-mark and trade-name, which it had prior thereto used in interstate and foreign commerce, the complainant registered the word "Ludlow" as its trade-mark, and on or about April 6, 1906, registered the same word as its trade-mark under Act Cong. Feb. 20, 1905, c. 592, 33 Stat. 724 (U. S. Comp. St. Supp. 1907, p. 1008).

The answer of the defendant denies generally the allegations upon which the claim of a common-law trade-mark in the name "Ludlow" is founded, denies the existence of such a property right in said name, and avers that, by virtue of its peculiar patented devices for valves, the same became known as "Ludlow" patent valves, and that the word "Ludlow," when applied to such valves and hydrants of complainant's make, identified the generic name of certain types of patented valves or hydrants, and only in a subordinate sense indicated the source of manufacture, and that since the expiration of said patents, the type of valve known as the "Ludlow" valve has been open to the use and manufacture by all disposed to engage therein, and that said type of valves was still known and designated to the trade by the generic name of "Ludlow." The testimony as to this question is somewhat conflicting, and there is much in the case to support the contention that complainant possesses in the word "Ludlow" a common-law trade-mark as to all their products, including the valves and hydrants in question. Other companies and manufacturers than the defendant have, since the expiration of the patents on these valves, respected the claim for the trade-mark name "Ludlow," by manufacturing the same type of valves and hydrants without using said name. But it was in evidence also that much the larger percentage of articles manufactured by the complainant company consisted of these particular valves and hydrants, and that they were spoken of generally as "Ludlow" valves and "Ludlow" hydrants.

The learned judge of the court below, under these circumstances, having found that the peculiar features of the valves and gates in question gave to the valves and hydrants of that type the generic name "Ludlow," felt constrained to declare that the right to make such patented valves and to call them "Ludlow" valves, under the case of Singer v. June, 163 U. S. 170, 16 Sup. Ct. 1002, 41 L. Ed. 118, became public, and the bill was accordingly dismissed. Assuming,

however, as we are disposed to do, the correctness of the view, that the word "Ludlow" had become generic as applied to valves and hydrants of the type in question, within the meaning of the decision in the Singer Case, we think the evidence discloses ground for finding, the defendant guilty of unfair competition in the manner in which that name was used by it, whether stamped on its manufactured articles or in its advertisements and booklets relating to such articles, and put out to the trade by it. That the Ludlow Valve Manufacturing Company, notwithstanding the expiration of its patents, is still the largest producer of the articles designated by the name "Ludlow," and has undoubtedly had for many years the name "Ludlow" associated with its product, as indicating the source of manufacture, as well as the type of valve, renders it peculiarly important that the defendant, in using the name "Ludlow" as a generic name to describe the type of its product, should so use it as to preclude a possibility of mistake by that portion of the public likely to be interested, as to the source or origin of its manufacture. In other words, to so use the name as to avoid the unfair competition which the law frowns upon, and from which a court of equity will protect a complainant.

The power of courts of equity to restrain unfair competition, is a very beneficent one, and is founded upon a basis of sound business morality. The opinion of the Supreme Court of the United States, in the Singer Case, while recognizing the right to the use of the word "Singer," as a generic description of the article, makes emphatic recognition of the duty of the court to require the name to be used in connection with such proper statements in advertisements, etc., as to guard against any possibility of deceiving the public as to the source of manufacture.

No arbitrary rules have ever been, nor ever can be, laid down by which courts of equity will furnish this protection. To establish such rules, would, like definitions in the law, furnish the means by which fraud could successfully accomplish its ends. Courts of equity may require such form of words to be used in connection with the appropriated name as will completely protect the rightful owner of that name from injury and the public from imposition, and a defendant so using the name has no just right to complain of any form of words in connection with the name, the only purpose and effect of which is to prevent appropriation by him of the fruits of another's business enterprise and skill.

It has been shown, as above remarked, that others have engaged in the manufacture of this type of valves and hydrants, and have successfully advertised the same, without the use of the word "Ludlow," or at least without such use of it as is made by the defendant. The advertisements of the defendant in the case before us, as well as its catalogues, seem to have been contrived to come within the letter of what is supposed to be the rule established by the Singer Case. But the rule established in that case was simply, that where the use by another of the name of the first manufacturer and patentee of an article is permitted, on the ground that such name is generic and descriptive of the type or kind of thing manufactured, it can only be

so used in connection with such words or statements as unequivocally and unmistakably indicate the origin of manufacture, and that it is not the product of the original patentee or manufacturer whose name is thus permitted to be used. How this principle was applied to the facts before the court in the Singer Case, is indicated by the closing paragraph of the opinion of the Supreme Court, as it was delivered by Mr. Justice White:

"It follows, therefore, that the judgment below, which recognized the right of the defendant to make or vend sewing machines in the form in which they were made by him—that is, like unto the machines made upon the principles of the Singer system—with the use of the word 'Singer,' without a plain and unequivocal indication of the origin of manufacture, was erroneous. Therefore the decree below must be reversed and the cause remanded, with directions to enter a decree in favor of complainant, with costs, perpetually enjoining the defendant, its agents, servants and representatives, first, from using the word 'Singer' or any equivalent thereto, in advertisements in relation to sewing machines, without clearly and unmistakably stating in all said advertisements that the machines are made by the defendant, as distinguished from the sewing machines made by the Singer Manufacturing Company; second, also perpetually enjoining the defendant from marking upon sewing machines or upon any plate or device connected therewith, or attached thereto the word 'Singer,' or words or letters equivalent thereto, without clearly and unmistakably specifying in connection therewith that such machines are the product of the defendant or other manufacturer, and therefore not the product of the Singer Manufacturing Company."

The determination of each case must depend upon its particular facts, and the Supreme Court in the Singer Case considered carefully both the advertisements and the plate upon the machines made by the defendants, so as to determine whether they sufficiently indicated the origin of manufacture. They considered the shape of the plate, its material, the position in which it was placed upon the machines, its size, its color, the prominence given to the words "Improved Singer," the position of the initials of the defendant, "J. M. Co.," and the monogram "J. Mfg. Co.," and decided that there was—

"an entire failure on the part of the defendant to accompany the use of the word 'Singer' on the machines made and sold by him, with *sufficient* notice of their source of manufacture, to prevent them from being bought as machines made by the Singer Manufacturing Company, and thus operate an injury to private rights and deceit upon the public." (The italics are ours.)

In the displayed advertisements of the defendant, shown as exhibits in the record, the words "Ludow Valves" are printed prominently at the head of the advertisements, in largest type, with illustrations of the different valves, and repeated use of the word "Ludlow," occupying the main portion of the page, while at the very bottom, the words "Pittsburgh Mfg. Co., Pittsburgh, Pa." appear in smaller type. In the booklets and catalogues, too, of the defendant company, while the words "Pittsburgh Mfg. Co." appear, they appear less conspicuously than the words "Ludlow" and "Ludlow Valves," and these catalogues are further shown to be in most cases exact copies of complainant's catalogues, with identical price lists, and illustrations which are evidently photographs from the illustrations of complainant's catalogues. The defendant in this case has evidently acted on the belief that the rule enunciated in the Singer Case is complied with by the appearance

anywhere in the advertisement of the defendant's name. This, of course, is not true. The rule is, that what the court will regard as sufficient notice of the source of manufacture, must be given by such user of another's trade-name, and that such name may not be used without clearly and unmistakably specifying, in connection therewith, that such machines are the product of the defendant, or other manufacturer, and therefore not the product of the original maker and vendor thereof. To use the language of the Supreme Court in the recently decided Hall Safe Co. Case, 208 U. S. 554, 24 Sup. Ct. 350, 52 L. Ed. 616:

"The explanation must accompany the use, so as to give the antidote with the bane."

There must be, if in the opinion of the court the facts warrant it, an explanation, not merely a printing of the defendant's name.

In the case before us, the prominence given to the name "Ludlow," throughout defendant's advertisements, might well lead intending purchasers to believe that the defendant was agent of the old and long established Ludlow Manufacturing Company, the original producers of the valves in question. Defendant alleges that it has already endeavored to make clear the source and origin of manufacture of the valves in question. It cannot object, therefore, if it is required by a clearer and more unequivocal statement, to insure the accomplishment of the end it professes to have had in view. Counsel for the defendant said at the argument that they should not be required to advertise the Ludlow Manufacturing Company. The only advertisement defendant would give that company is by saying to the public that it is manufacturing a valve of the Ludlow model or type. Common honesty requires that it should do this, and it cannot be injured by doing it so unequivocally and plainly as to preclude the possibility of mistake.

We are constrained, therefore, to hold that by its present method of advertisement, defendant is guilty of unfair competition with complainant, and that it should be restrained from its present practices in that regard, and from using the word "Ludlow" in its advertisements or on its machines, without placing its own name at the head of such advertisements and making it clear in the body thereof that it is manufacturing the articles in question, independently of the complainant company, by describing the valves and hydrants manufactured by it as of the "Ludlow" model or type, and that the complainant company is not the manufacturer thereof.

The decree below must therefore be reversed, with costs, and the cause will be remanded, with directions to enter a decree in favor of complainant, with costs, perpetually enjoining the defendant, its agents, servants, and representatives, from using the word "Ludlow," or any equivalent thereof, upon valves or hydrants, or in advertisements in relation thereto, without clearly and unmistakably specifying that the valves and hydrants are made by the defendant, as distinguished from those made by the Ludlow Manufacturing Company.